IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH

| | |
|---|---|
| JOSEPH DEPACE, | ) |
| Plaintiff, | ) 2:19-CV-00061-CRE |
| vs. | ) |
| NORFOLK SOUTHERN RAILWAY COMPANY, | ) |
| Defendant, | ) |

## MEMORANDUM OPINION[1]

Cynthia Reed Eddy, Chief United States Magistrate Judge.

This civil action was initiated in this court on January 21, 2019, by Plaintiff Joseph DePace to recover damages against his former employer, Defendant Norfolk Southern Railway Company. Plaintiff claims that he is entitled to damages pursuant to Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101; and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951-63. *See* First Amended Complaint ("FAC") (ECF No. 38). This court has subject matter jurisdiction over the controversy pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the PHRA claim pursuant to 28 U.S.C. § 1367.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including trial and the entry of a final judgment. (ECF Nos. 13, 15).

1

Presently before the Court is a motion for summary judgment by Defendant filed pursuant to Federal Rule of Civil Procedure 56. (ECF No. 78).  For the reasons that follow, this court denies Defendant's motion for summary judgment.

I. **BACKGROUND**

Defendant "is a freight railroad." Def.'s Concise Statement of Undisputed Material Facts ("Def.'s CSF") (ECF No. 80) at ¶ 1.  Plaintiff began working for Defendant on March 4, 1998, as a Machinist.[2] Plaintiff's Response to Def.'s CSF ("Pl.'s CSF") (ECF No. 84) at ¶ 1.  "The Machinist position is an active position requiring significant movement on and around locomotives, as well as physical exertion which is required to move and use various parts and equipment needed to repair locomotives." Def.'s CSF (ECF No. 80) at ¶ 4.  In 2012, Plaintiff became a Supervisor Gang Leader ("SGL").  According to Plaintiff, an SGL can be performed "100% in the office."[3] Pl.'s CSF (ECF No. 84) at ¶ 4.

"Plaintiff went on medical leave in December 2014 to undergo a second surgery to repair a non-work injury to his right rotator cuff." Def.'s CSF (ECF No. 80) at ¶ 11.  After undergoing additional surgeries, Plaintiff notified Defendant of his intent to return to work in 2017. *Id*. at ¶ 13. At Defendant's request, Plaintiff provided Defendant with a set of medical records.  Defendant believed these records to be "incomplete." Affidavit of Dr. Francesca Litow ("Dr. Litow")[4] (ECF

---

[2] According to Defendant, Plaintiff began working for Defendant on June 1, 1999, as a Machinist. "Def.'s CSF" (ECF No. 80) at ¶ 2.

[3] According to Defendant, "the employee selected to fill the SGL role is expected to be able to perform all of the essential functions of a Machinist in the event that the role is eliminated due to furlough or the Machinist is needed for overtime purposes." Def.'s CSF (ECF No. 80) at ¶ 9.

[4] Dr. Litow is Defendant's Chief Medical Officer ("CMO") and is "responsible for policies and processes to ensure the medical fitness for duty for [Defendant's] safety-sensitive employees." Declaration of Dr. Litow (ECF No. 80-1) at ¶ 4.

No. 80-1) at ¶ 7.  Plaintiff provided additional records a few days later, although according to Dr. Litow, those records were also incomplete.[5] *Id*. at ¶ 8.  However, this set of records included "a general release from [Plaintiff's] physician, Dr. Thomas Hughes, that released [Plaintiff] to return to work without restrictions."[6] *Id*.  A few weeks later, Plaintiff provided a third set of records, which, according to Dr. Litow, "conflicted with Dr. Hughes' release without restrictions." *Id*. at ¶ 9.  Thus, Dr. Litow requested Plaintiff to undergo an Independent Medical Examination "IME" with Dr. Allan Tissenbaum.

After reviewing Plaintiff's medical records and conducting an exam of Plaintiff, Dr. Tissenbaum concluded that Plaintiff is not able to medically safely perform the job duties of a Machinist because he "continues to have weakness at and above the shoulder level and is unable to continuously lift 50 pounds without further risking injuring his surgically repaired shoulder." Dr. Tissenbaum's Report (ECF No. 80-3) at 13.  Dr. Tissenbaum further provided that Plaintiff's returning to the position of Machinist would create a significant risk of aggravation of his right shoulder condition, that Plaintiff has reached maximum medical improvement, and that Plaintiff should not perform any motions "that put his right rotator cuff repair at risk," including "heavy lifting away fro[m] his body and lifting repetitively with weight above his shoulder level." *Id*.

On June 1, 2017, Defendant informed Plaintiff "that his restrictions could not be accommodated in the Machinist position and referred him to the VRS program for assistance in finding an alternative position with" Defendant. Def.'s CSF (ECF No. 80) at ¶ 34.  At the time, there were no open SGL positions available, and no positions in the same shop available for

---

[5] Plaintiff claims that the documentation included "Dr. Hughes's treatment notes and examinations." Pl.'s CSF (ECF No. 84) at ¶ 17.

[6] Specifically, that letter stated, that Plaintiff "was seen in office on 2/20/17 and is release[d] to a full duty status with no restrictions as of 1/23/17." Letter from Dr. Hughes (ECF No. 84-9) at 2.

3

someone with Plaintiff's restrictions. *Id*. at ¶ 41.  Defendant made Plaintiff aware of positions available in Georgia and Virginia, but Plaintiff did not respond to those applications. Plaintiff stopped participating in the VRS program in August 2017.  In September 2017, Plaintiff provided Defendant "with a second general release" from Dr. Hughes, which, according to Defendant, also "contained no supporting clinical objective evidence."[7] *Id*. at ¶ 30.  Plaintiff did not return to work for Defendant.[8]

Plaintiff filed the Complaint in this matter on January 21, 2019.  Plaintiff contended that Defendant discriminated against him by regarding him as disabled and/or because he was disabled and failed to accommodate his disability, in violation of section 504 of the Rehabilitation Act, the ADA, and the PHRA.  The parties conducted discovery, and on November 16, 2020, Defendant filed the instant motion for summary judgment, brief in support thereof, and CSF. (ECF Nos. 78-80).  Plaintiff filed a responsive brief and CSF. (ECF Nos. 84-85).  Defendant filed a reply. (ECF No. 86-87).  The matter is now ripe for disposition.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A genuine issue of material fact is one that could affect the outcome of litigation. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (citing

---

[7] This letter from Dr. Hughes provided that he has "reviewed with [Plaintiff] his ability to return to his job." Letter from Dr. Hughes (ECF No. 84-9) at 12. Dr. Hughes stated that he does not "feel that [Plaintiff] is at any risk to return to that work based on his previous rotator cuff tear." *Id*.

[8] Subsequently, at an office visit on February 13, 2020, "Dr. Hughes prescribed and reviewed another functional capacity test [("FCE")]." Pl.'s CSF (ECF No. 84) at ¶ 55.  "Dr. Hughes interpreted the FCE results that [Plaintiff] could lift 50 pounds in 12 positions except overhead work was limited to 43 pounds.  Dr. Hughes stated that this was essentially normal shoulder function, 0 out of 10 pain and again released him to regular duty work." *Id*.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *N.A.A.C.P. v. North Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The initial burden is on the moving party to adduce evidence illustrating a lack of genuine, triable issues. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). Once the moving party satisfies its burden, the non-moving party must present sufficient evidence of a genuine issue, in rebuttal. *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587). When considering the parties' arguments, the court is required to view all facts and draw all inferences in the light most favorable to the non-moving party. *Id.* (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). The benefit of the doubt will be given to allegations of the non-moving party when in conflict with the moving party's claims. *Bialko v. Quaker Oats Co*., 434 F. App'x 139, 141 n.4 (3d Cir. 2011) (citing *Valhal Corp. v. Sullivan Assocs.*, 44 F.3d 195, 200 (3d Cir. 1995)).

Nonetheless, a well-supported motion for summary judgment will not be defeated where the non-moving party merely reasserts factual allegations contained in the pleadings. *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010) (citing *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989)). The non-moving party must resort to affidavits, depositions, admissions, and/or interrogatories to demonstrate the existence of a genuine issue. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773 (3d Cir. 2013) (citing *Celotex Corp.*, 477 U.S. at 324).

### III.  DISCUSSION

*A. Framework for an ADA Claim*

By way of background, "Congress enacted the ADA in 1990 in an effort to prevent otherwise qualified individuals from being discriminated against in employment based on a disability."[9] *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 579 (3d Cir. 1998).  "A discrimination claim under the ADA is analyzed under the familiar burden shifting of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)." *Rubano v. Farrell Area Sch. Dist.*, 991 F. Supp. 2d 678, 699 (W.D. Pa. 2014).  "Under this framework, initially, the plaintiff bears the burden of establishing a *prima facie* case of discrimination." *Id*.  "If the plaintiff successfully establishes a *prima facie* case, the burden then shifts to the employer to articulate some legitimate non-discriminatory reason for the adverse employment action." *Id*. at 699-700. "Once the employer carries its burden, the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the legitimate reasons proffered by the employer were merely a pretext for discrimination, and not the true motivation for the adverse employment action." *Id*. at 700.

*B. Prima Facie Case*

"To establish a *prima facie* case of disability discrimination under the ADA, the employee must show that he (1) is a disabled person within the meaning of the ADA; (2) is qualified to

---

[9] "The PHRA is basically the same as the ADA in relevant respects and Pennsylvania courts ... generally interpret the PHRA in accord with its federal counterparts." *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 382 (3d Cir. 2002).  Furthermore, "[t]he elements of a claim under § 504(a) of the Rehabilitation Act are very similar to the elements of a claim under Title I of the Americans with Disabilities Act, 104 Stat. 328, 42 U.S.C. § 12111 *et seq*." *Donahue v. Consol. Rail Corp.*, 224 F.3d 226, 229 (3d Cir. 2000).

perform the essential functions of his job, with or without reasonable accommodations, and (3) has been subjected to an adverse employment action as a result of discrimination." *Rubano*, 991 F. Supp. 2d at 699. "The existence of a *prima facie* case of employment discrimination is a question of law that must be decided by the court but the *prima facie* test remains flexible and must be tailored to fit the specific context in which it is applied." *Wishkin v. Potter*, 476 F.3d 180, 185 (3d Cir. 2007). This Court will analyze each the three prongs.

1. *Disabled Person Within the Meaning of the ADA*

Although the parties do not appear to dispute that Plaintiff should be considered a disabled person within the meaning of the ADA, they do dispute how this prong of the test has been satisfied, and it is this dispute that forms the basis of the issues that follow. *See* Def.'s Br. (ECF No. 79) at 5; Pl.'s Br. (ECF No. 85) at 6-9. Under the ADA, "[a]n individual with a disability is an individual who has (1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) has a record of such an impairment, or (3) is regarded as having such an impairment." *Walker v. U.S. Sec'y of the Air Force*, 7 F. Supp. 3d 438, 452 (D.N.J. 2014) (internal quotation marks omitted).

It is Defendant's position that Plaintiff qualifies as a disabled person as a result of his non-work-related shoulder injury and related shoulder surgeries, which have substantially limited some of Plaintiff's major life activities. In support thereof, Defendant relies on "the May 26, 2017 IME final report, which was issued by board certified orthopedic surgeon Dr. Allan Tissenbaum." Def.'s Br. (ECF No. 79) at 13. According to Defendant, Dr. Tissenbaum limited Plaintiff to: "(1) sedentary work only; (2) occasional lifting of no more than ten pounds; (2) no frequent awkward

positioning of the right arm; (4) no climbing ladders; and (5) no reaching above the shoulder."[10]

*Id*.

It is Plaintiff's position that he is not disabled, but rather is mistakenly regarded as being disabled by Defendant.

> For an individual to be "disabled" under the "regarded as" portion of the ADA's definition of disability, the individual must demonstrate either that: (1) despite having no impairment at all, the employer erroneously believes that the plaintiff has an impairment that substantially limits major life activities; or (2) the plaintiff has a nonlimiting impairment that the employer mistakenly believes limits major life activities.

*Tice v. Ctr. Area Transp. Auth.*, 247 F.3d 506, 514 (3d Cir. 2001).

Here, Plaintiff presents evidence of his treating physician, Dr. Hughes, who released Plaintiff to work without restrictions after Plaintiff's 2016 shoulder surgery. *See* Pl.'s Br. (ECF No. 85) at 2. Furthermore, Plaintiff presents evidence that work he has found since 2017 is "more physically demanding." *Id*. at 3. Furthermore, according to Plaintiff, "[i]n February of 2020, Dr. Hughes prescribed a functional capacity exam [in] which [Plaintiff] completed all of the tasks except overhead lifting was restricted to 43 pounds." *Id*.

Based on the foregoing, there are genuine issues of material fact in determining how Plaintiff is a disabled person. This Court recognizes that a factfinder could believe the testimony

---

[10] In support thereof, Defendant refers to the declaration filed by Dr. Litow *See* Declaration of Dr. Litow (ECF No. 80-1). She references Dr. Tissenbaum's IME report. In that report, Dr. Tissbenbaum provides that Plaintiff has no restrictions with respect to walking, standing, bending at the waist, squatting at the knees, climbing stairs, kneeling, crawling, using feet, and grasping with hands. *See* Dr. Tissenbaum's Report (ECF No. 80-3) at 2. Dr. Tissenbaum limited Plaintiff's ability to lift and carry to "sedentary" and concluded Plaintiff was unable to climb a ladder or reach above the shoulder. *Id*. According to Dr. Tissenbaum, Plaintiff "should be permanently restricted from all occupational activities that involve overhead and/or repetitive reaching and lifting of any weights. He should be permanently restricted from awkward positioning of the right upper extremity for any occupational tasks. In addition, he has a permanent gross lifting restriction in the occupational environment of 25 lbs." *Id*. at 12.

of Dr. Tissenbaum and Dr. Litow and conclude that Plaintiff indeed has a disability that substantially limits a major life activity. On the other hand, viewing the evidence in the light most favorable to Plaintiff as the non-moving party, a factfinder could believe Plaintiff and Dr. Hughes that Plaintiff does not have a disability, and therefore Defendant mistakenly regarded Plaintiff has having a disability. In either event, Plaintiff has carried his burden with respect to the first prong of the test, and this Court now considers whether Plaintiff is a qualified person under the ADA.

### 2. Qualified Person Under the ADA

This Court now considers the second prong of the *prima facie* case, whether Plaintiff "can perform the essential functions of the employment position that such individual holds" "with or without reasonable accommodation." *Supinski v. United Parcel Serv., Inc.*, 413 F. App'x 536, 539 (3d Cir. 2011). Defendant argues that Plaintiff has failed to establish "that he could perform the essential functions of the job with or without reasonable accommodations." Def.'s Br. (ECF No. 79) at 6. According to Defendant, essential functions of being a Machinist and SGL are the ability to be physically active and lift objects up to 50 pounds. It is Defendant's position that Plaintiff is medically disqualified from performing those functions, and it is not able accommodate Plaintiff's disability. *Id.* at 8. In response, Plaintiff contends that physical activity and lifting are not essential functions of either position, but even if they were, Plaintiff believes he is medically capable of performing those functions. Pl.'s Br. (ECF No. 85) at 11-12.

> In general terms, the "essential functions" of a position are the "fundamental job duties," as opposed to the "marginal functions." 29 C.F.R. § 1630.2(n)(1). A job function may be considered essential for a number of reasons, including because (1) "the reason the position exists is to perform that function," (2) only a limited number of employees are available "among whom the performance of that job function can be distributed," or (3) the function is "highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function." *Id.* § 1630.2(n)(2). Under the ADA's implementing regulations, evidence a particular job function is essential may include, but is not limited to:

9

>    (i) The employer's judgment as to which functions are essential;
>
>    (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
>
>    (iii) The amount of time spent on the job performing the function;
>
>    (iv) The consequences of not requiring the incumbent to perform the function;
>
>    (v) The terms of a collective bargaining agreement;
>
>    (vi) The work experience of past incumbents in the job; and/or
>
>    (vii) The current work experience of incumbents in similar jobs.
>
> *Id*. § 1630.2(n)(3).
>
>    As [the court has] repeatedly recognized, whether a particular function is essential 'is a factual determination that must be made on a case by case basis [based upon] all relevant evidence. Although the burden is on the plaintiff to show, as part of his *prima facie* case, that he is a qualified individual, the employer "has the burden of showing a particular job function is an essential function of the job." *Rehrs v. Iams Co.*, 486 F.3d 353, 356 (8th Cir.2007); *see also* 29 C.F.R. pt. 1630, app. § 1630.2(n) (while "the inquiry into essential functions is not intended to second guess an employer's business judgment with regard to production standards," the employer "will have to show that it actually imposes such requirements on its employees in fact, and not simply on paper").

*Supinski*, 413 F. App'x at 540 (some internal citations and quotation marks omitted).

According to Defendant, "[a] Machinist is a safety-sensitive position. Machinists are primarily responsible for the inspection and repair of locomotives in a locomotive shop or on repair tracks. As a result, the Machinist position is an active position requiring significant movement on and around locomotives, as well as physical exertion which is required to move and use various parts and equipment needed to repair locomotives." Declaration of Dr. Litow (ECF No. 80-1) at ¶ 5. The job demand form for the Machinist position provides numerous physical activities that a Machinist must perform, including bending, stooping, crouching, squatting, kneeling, climbing,

walking, pushing, and pulling. Machinist Job Description (ECF No. 80-2) at 1. Furthermore, a Machinist must be able to reach above shoulder height and occasionally lift up to 50 pounds. *Id*. An SGL is "appointed from amongst the group of Machinists working at that location." Def.'s CSF (ECF No. 80) at ¶ 7. "[T]he individual holding the SGL role is a Machinist and must be able to perform the Machinist job." Declaration of Matt Jones (ECF No. 80-6) at ¶ 9.

According to Plaintiff, the job duties of a Machinist "are not really physically demanding" and primarily involve "turning wrenches." Pl.'s CSF (ECF No. 84) at ¶ 4. Plaintiff testified that "he did not have to lift waist to shoulder or lift shoulder to overhead," and "a jig crane was available to lift heavier items." *Id*. Furthermore, it is Plaintiff's position that when a Machinist is an SGL, the position is "sedentary." *Id*.

Defendant, relying on the IME performed by Dr. Tissenbaum, contends Plaintiff is not able to medically safely perform the job duties of a Machinist because he "continues to have weakness at and above the shoulder level and is unable to continuously lift 50 pounds without further risking injuring his surgically repaired shoulder." Dr. Tissenbaum's Report (ECF No. 80-3) at 13. Dr. Tissenbaum further provided that Plaintiff's returning to the position of Machinist would create a significant risk of aggravation of his right shoulder condition, he has reached maximum medical improvement, and that Plaintiff should not perform any motion "that put his right rotator cuff repair at risk," including "heavy lifting away fro[m] his body and lifting repetitively with weight above his shoulder level." *Id*.

Upon review of this record, Defendant has demonstrated that an essential function of being a Machinist requires at least some physical activity. However, it is also clear, based upon Dr. Tissenbaum's report, that Plaintiff can indeed perform some physical activity, and even most of the activities set forth on the job demand form. However, there are genuine issues of material fact

as to whether Plaintiff is able to perform the level of physical activity necessary to be a Machinist. The record is not clear about whether lifting up to 50 pounds and repetitively reaching above the shoulder, two activities from which Dr. Tissenbaum medically disqualified Plaintiff, are considered essential functions of the Machinist position.

Moreover, Plaintiff has presented evidence, in the form of testimony from Dr. Hughes, that Plaintiff is able to reach and lift overhead and return to his previous job. Thus, even if a factfinder believes that Plaintiff is disabled based upon Dr. Tissenbaum's report, Plaintiff still may be able to perform the essential functions of the Machinist position. *See Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 309 (3d Cir. 1999) (pointing out that it is the role of a factfinder to assess the weight to be given to a report from an expert). Accordingly, the Court concludes there are genuine issues of material fact with respect to this prong of the *prima facie* case.

### 3. Adverse Employment Action

The third prong of the *prima facie* case requires a Plaintiff to demonstrate that he was subjected to an adverse employment action. "An adverse employment action is one in which a reasonable person could find that the employment was substantially worsened." *Bearley v. Friendly Ice Cream Corp.*, 322 F. Supp. 2d 563, 577 (M.D. Pa. 2004). "[A] change in employment status, responsibilities, or duties—even without a reduction in pay—may qualify as an adverse employment action." *Jakomas v. City of Pittsburgh*, 342 F. Supp. 3d 632, 645 (W.D. Pa. 2018). Here, Defendant contends that Plaintiff has failed to satisfy this prong because it reasonably relied on Dr. Tissenbaum's IME report to disqualify Plaintiff from being a Machinist. Def.'s Br. (ECF No. 79) at 17. However, the record demonstrates that Defendant clearly did not permit Plaintiff to return to work as a Machinist, which in and of itself satisfies this prong of the test. Defendant's argument that this action was reasonable goes to the issue of pretext, which is discussed *infra*.

12

Accordingly, Plaintiff has satisfied his burden with respect to this prong.  Based on the foregoing, there are genuine issues of material fact that preclude this Court from granting summary judgment based upon Defendant's contention that Plaintiff has failed to establish a *prima facie* case.

### C. Legitimate Non-Discriminatory Reason

Having concluded that there are genuine issues of material fact with respect to Plaintiff's *prima facie* case, the burden "shifts to the employer to articulate some legitimate non-discriminatory reason for the adverse employment action." *Rubano*, 991 F. Supp. 2d at 700.  At this stage, "the employer's burden is relatively light; [the employer] simply has to introduc[e] evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Jackson v. Planco*, 660 F. Supp. 2d 562, 577 (E.D. Pa. 2009) (internal quotation marks omitted).

Here, Defendant contends that it reasonably relied on Dr. Tissenbaum's IME report in concluding that Plaintiff was disabled and unable to perform the Machinist or SGL jobs with or without accommodation.  Dr. Tissenbaum's IME report clearly states that Plaintiff is unable to return to work as a Machinist. *See* Dr. Tissenbaum's Report (ECF No. 80-3) at 13.  Accordingly, Defendant has established a legitimate, non-discriminatory reason for not permitting Plaintiff to return to work as a Machinist.

### D. Pretext

"After the employer has articulated a legitimate and nondiscriminatory reason for its adverse employment decision, the employee may defeat summary judgment by identifying evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Showers v. Endoscopy Ctr. of Cent.*

*Pennsylvania, LLC*, 58 F. Supp. 3d 446, 466 (M.D. Pa. 2014) (internal quotation marks omitted). According to Plaintiff, "a reasonable jury could conclude that [Defendant's] refusal to schedule a field test, functional capacity or peer review coupled with the fact that Dr. Litow did not speak with [Plaintiff] or his treating orthopedic surgeon or even Dr. Tissenbaum are evidence of pretext, especially when Dr. Tissenbaum's reports are inconsistent with each other with respect to lifting restrictions of ten versus twenty pounds." Pl.'s Br. (ECF No. 85) at 17.  In other words, Plaintiff argues that a factfinder should conclude that Defendant's stated reason for medically disqualifying Plaintiff are not credible.

> To prove pretext by discrediting the employer's articulated reasons, a plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons. The plaintiff must show not merely that the employer's proffered reason[s] [were] wrong, but that [they were] so plainly wrong that [they] cannot have been the employer's real reason[s].  To make this showing, the plaintiff may introduce evidence to show (1) that the proffered reasons had no basis in fact[;] (2) that the proffered reasons did not actually motivate [the act;] or (3) that they were insufficient to motivate discharge. The plaintiff is not required to show that the employer acted with a discriminatory purpose, nor is the plaintiff required to present any additional evidence beyond his or her *prima facie* case.

*Proudfoot v. Arnold Logistics, LLC*, 59 F. Supp. 3d 697, 705 (M.D. Pa. 2014) (internal citations and quotation marks omitted; emphasis in original).

As discussed *supra*, there are genuine issues of material fact with respect to the essential functions of the Machinist position.  It was Dr. Tissenbaum's position that Plaintiff could not perform the duties of a Machinist because Plaintiff should not perform "heavy lifting away from his body and lifting repetitively with weight above his shoulder level." Dr. Tissenbaum's Report (ECF 80-3) at 13.   It is Defendant's position that it "is entitled to place greater weight on the opinion of the IME physician over Plaintiff's own treating doctor." Def.'s Reply (ECF No. 86) at

14

4. However, it is not clear whether these functions are essential to the position or could be otherwise accommodated. To the extent these functions are not essential to a Machinist position, a factfinder could conclude that these restrictions were insufficient to permit Defendant to rely on the IME report and medically disqualify Plaintiff from being a Machinist. Based on the foregoing, there are genuine issues of material fact with respect to whether Defendant's relying exclusively on Dr. Tissenbaum's report, to the exclusion of other evidence, was a pretext to not permit Plaintiff to return to work. Accordingly, this Court is precluded from granting summary judgment on Plaintiff's claim for disability discrimination pursuant to the ADA, the PHRA, and section 504 of the Rehabilitation Act.

### E. *Failure-to-Accommodate Claim*

This Court now considers Plaintiff's discrimination claim based on Defendant's failure to accommodate. "To establish an ADA failure-to-accommodate claim a plaintiff must show: (1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated." *Gardner v. SEPTA*, 410 F. Supp. 3d 723, 741 (E.D. Pa. 2019). Defendant contends that Plaintiff has failed to establish a failure-to-accommodate claim because Plaintiff never requested "any viable accommodation when he attempted to return to work in April 2017." Def.'s Br. (ECF No. 79) at 20.

Here, the record is clear that Plaintiff did not believe he needed any accommodations in order to return to work as a Machinist. *See* Def.'s CSF (ECF No. 80) at ¶ 32 (referencing testimony by Plaintiff that he believes he is not disabled and that he does not need assistance to perform the Machinist position). Based on the foregoing, Plaintiff has not established a failure to accommodate claim, and this Court grants Defendant's motion for summary judgment with respect to this claim.

## IV.   CONCLUSION

Based on the foregoing, Defendant's motion for summary judgment is granted in part and denied in part.  Defendant's motion for summary judgment filed pursuant to the discrimination claim under the ADA, PHRA, and section 504 of the Rehabilitation Act is denied.  Defendant's motion for summary judgment with respect to the failure-to-accommodate claim is granted.

An appropriate Order follows.

Dated: April 12, 2021            .                                        BY THE COURT:

s/ Cynthia Reed Eddy

Chief United States Magistrate Judge


cc:      Counsel of record
          *via electronic filing*